Good morning, Your Honors. James Floss Flander appearing on behalf of the Maui Wedding Planners. Sorry, Maui Wedding Planners, they changed their name on me halfway through this. And Laki Kaahumanu. Laki Kaahumanu. We are agreed to divide our time half and half. We'll try to help, but you keep track of your time. Thank you very much. To me, what's going on in this case is very simple. The state wants you to follow their interpretation of what commercial speech is. You're both representing the association? I'll represent Laki Kaahumanu and she'll represent the association. What they want you to do is to take their interpretation of what is commercial speech. Their interpretation is utterly novel. It's not found in any other statutes that I can find. It's not found in any court decisions. Their decision, what they've done is to create a new definition, and that is that anything that involves any exchange of any thing of value turns a traditional political event or a traditional religious event into a commercial activity. Is Laki Kaahumanu alleged, or is there anything in the record that shows that he's covered by the statute? That's what? That he's covered by the statute? Well, it talks specifically about things related to weddings. Well, I know, but the complaint says that he, I thought maybe he was only here because he was a party to the agreement, because it says that he ministers weddings and doesn't say anything about him being paid for it, and it doesn't say, I'm just not, it wasn't clear to me that he was actually covered by the statute, or that there's anything in the record showing that he's covered by the statute. The historical practice was that he was. He was there at this first dispute that resulted in the settlement by the state legislature, and he has been threatened with enforcement again, but that's not, it may not be in the complaint. It certainly would have been a substantial part of the case had it gone forward. I mean, we're throwing out without, you know. So, again, you could amend your complaint to say that he, in fact, gets paid something for this wedding. Yes, he does. Yes, it's on the web. It's an honorarium or something. You could actually find that on the web, yes. Or if he's not paid, weddings he would otherwise perform can be done because of the permit or burden in that sense. Yes. So getting back to your argument, you were attacking the state's definition of commercial activity, right? Yes. Now, what does that mean? What does that violate, the First Amendment, you know, the 14th Amendment, some state law or what? Well, I mean, they have the right, I guess if they want to write down in their regulations, here's what we think this phrase means, but they don't have the right to expect federal courts to follow their interpretation of the English language For what purpose? So I'm trying to find out from your point of view, so what's wrong with their definition? I don't mean, you know, in the way they define it, but what does it violate? Well, I think it violates the right to equal protection. They've essentially singled out wedding ceremonies to receive harsher treatment than picnics, which flips the First Amendment on its head. I mean, they're essentially asking you to Now, is that because of the definition of commercial activity, or is that what the administration of the regulation? If I may, let me explain how it would affect me going back in time to 25 years ago when I got married on Maui. My wife and I were on the beach, we were windsurfers, and we were talking about whether or not we wanted to get married on the beach or whether we wanted to get married by justice of the peace. And I, at that point, had had a First Amendment case go to the U.S. Supreme Court, and that was the case involving the city of New York and Rock Against Racism, a fairly commonly cited case. So I knew something about the First Amendment. I mean, I'd gotten injunctions. I'd gotten injunctions in Texas at the convention for Ronald Reagan. I studied the First Amendment. It never would have occurred to me in a million years standing on Kanaha Beach that I needed to go get a permit to have a wedding on that beach. Well, you see, earlier you were talking about equal protection. Now you're talking about the First Amendment. I think it violates a lot of things. I mean, this is just a nonsensical approach to the law. They don't get to change the English language. The problem is that it covers, as I understand it, a range of things. If you have a family wedding on the beach with a minister who's getting an honorarium, but there's not 100 people sitting there with tables and chairs and flower arrangements and altars and so on, that's one thing. On the other hand, if you – in that instance, the only way that – how would the statute affect you? A, you'd have to get a permit. B, you'd have to – it couldn't be more than two hours. The thing that's really important is the part of the statutes that says that the administrator can change the rules at any time and can revoke your permit at any time. I mean, that's just outrageous. Right, he could come – theoretically, although it hasn't happened, come to the middle of the ceremony. No, it did happen back – that's what caused the first case. That was exactly what happened. But what if you had – so let's take – that's one hypothesis. What if the second event is organized by a commercial wedding organizer and it's a wedding for 200 people and there are tables and chairs and tablecloths and flower arrangements and served dinners and a buffet line and a kitchen and so on on the beach? Now, do you think that they could not regulate that? Well, absolutely they can regulate it, but they can't regulate it as they have here with a bulldozer. I mean, this is not carefully crafted time, place, and manner. Do you think that's a First Amendment-protected activity? Not just the ceremony. And ceremony, let's assume is. But what about this big party afterwards? Well, let me flip it. What if the president comes here to speak? How many people are going – and he wants to speak on a beach. How many people are going to get paid money to put that event on? There's the secret service. There's his speech writer. There's the makeup people. Could you answer my question as to is the event and the physical presence of it with all the stuff protected by the First Amendment? Once again, I believe that it's a question of time, place, and manner. They could place restrictions. So your answer is basically yes. Yes. They could say if it's bigger than 500 people, then you have to get a permit. According to our case law, they could probably say if it's bigger than 75 people. But I still want to know whether the – what we haven't covered in any of our cases that I know of is an event with objects with large physical presence that are stationary. Does that make a difference? Well, Rock Against Racism, I mean, that was a concert in Central Park, a political event. But the issue was about the sound of the music. It wasn't about – There were a dozen issues that were resolved before it got to the appellate level in our favor, which is why we got paid. And then there were many issues that were resolved in our favor at the final decision. There were issues that went against us. The only issue we really lost out of any substance was the issue regarding the city of New York saying that because it was such a commonly used thing, the Namburg Bandshell, that they wanted to have their own sound system. But this large event in Central Park didn't need a permit? I find that hard to believe. No, a large event in Central Park did require a permit. Okay, so that's what I'm trying to find out. But it was carefully crafted. There's no question that they can carefully craft a time, place, and manner restriction that would put limits on how big a family – So what exactly is your complaint? The point is that they can't make it more restrictive for religious and political events than they can for family picnics. If they want to make a restriction that says over 300 people on this beach, that's all it holds, no matter whether it's a family picnic, a religious wedding, whatever, they can do that. So in terms of a legal argument, what are you saying? It's overbroad? Vastly overbroad. Is that which argument, overbroad? That's, I think, the strongest argument, yes. It is vastly overbroad. So overbroad is a First Amendment argument, right? Yes. It just goes so far beyond reason. I mean, one penny changes hands, and then you have to go get a permit. No penny changes hands, you don't have to get a permit. You make a deal – You're saying that if you had a family picnic, and my whole description evolved. I mean, it wasn't even a picnic. It was a big birthday party for 100 people with tables and chairs and all that. You don't need a permit. That's not protected by the First Amendment. A birthday party, I can't find a case. I've looked. But it's not protected by the First Amendment? Right. But it's not covered by the statute? So they can – Do they agree it's not covered by the statute? I think they agree it's not covered by the statute. It's a little unclear. The statute is not a model of clarity. Did you make that overbreadth argument to the district court? I believe we did. And the district court's response was? I don't remember Judge King, the late Judge King, discussing overbreadth this way. Well, I recall discussing it with him, I think. All right. Go ahead. Well, you know what? I think you'd better – I mean – If you want to keep peace with your co-counsel, you'd better let her talk. That's fine. Thank you, Your Honor. Thank you, Judge Fletcher. Judge Tishima, Judge Fletcher, Judge Bresen, I'm Susan Halevy. I'm co-counsel with James Fassbinder representing the appellants. Can you speak up a little bit? Yes, Your Honor. This is, first and foremost, a First Amendment overbreadth case. The reason why that's not clear in the district court's opinion is that he gave it short shrift. Now, was it argued as overbreadth to the district court? Yes, Your Honor. Yes, it was. And it's amply briefed. Now, your clients are an organization of – Malware wedding and event professionals. All right. So what exactly is their First Amendment interest in this? They hope – Or are they stand-ins for the interest of their clients? Your Honor, you're correct. It could go either way because when you're dealing with an overbreadth situation and this regulation is vastly overbroad, it would, in fact, cover the honorarium hypothetical that you pose judge Bresen. If you had a man, a woman, and a minister, and they gave the minister an honorarium, that is considered compensation under the definition of obligation. Suppose they wrote a new statute. They fixed it, and they said, if you're going to have more than 75 people at this wedding on the beach, and – well, let's start with that. Then, Your Honor, you'd be into the discussion of time, place, and manner. And the Ninth Circuit is very clear in its precedence that at a certain point, an event can become unwieldy, and the state's interest in controlling those events in public fora is triggered. However, this Court has held that such regulations never apply to a small gathering. I think you'd consider – Now, do you think that the First Amendment – and as I asked your colleague – that the First Amendment protects not just the ceremony but the whole event? All right. Your Honor, I think that is a difficult question I've researched in. I know of one case in another jurisdiction where the issue was a wedding reception, which is like a party – That's what I'm talking about, a wedding reception. – in another place, and it was separate from the ceremony. In that particular case in another jurisdiction, they held that that was not protected. However, we're talking primarily here with the ceremony, and under the recent decision of this Court in – Oh, it's the tattoo one. Anderson, I think it is. There's a wonderful discussion about what constitutes protected speech, and it has to do with when you have something that is so imbued with meaning that it becomes speech even if there are no words spoken. That could be a parade, and in that case, they talked about how even the organizing of the parade is a protected activity. That was a tattooing case, and that's a protected activity. Your clients wouldn't be thrilled if the ceremony was protected but not the party. Your Honor, my clients do a number of things. They organize ceremonies on the beach. They organize receptions, which may be at a hotel someplace else. A lot of people come to Hawaii to get married early in the morning or late at night, sunset ceremony when there are few beachgoers actually on the beach, and my client is involved in helping to organize those events. So on your overbreath argument, your argument is that the regulation is overbroad in several respects, right? Yes, Your Honor. I mean, one, apparently, is the time. Two is the number of people who participate. Three is, I mean, you know, in all kinds of ways you think it's overbroad, don't you? Yes, Your Honor. If you go back to the case, the Fox case, which is a United States Supreme Court case, it's a really great analogy to this case because in that case there was a statute regulating commercial activity on a college campus. They didn't use the word speech anywhere in that regulation, nowhere. It was about commercial activity. And in fact, the plaintiffs were students who wanted to have Tupperware parties and were being stopped from doing that. And the Supreme Court held in that case that those students had standing to speak on behalf of everyone whose speech would be affected. A paid tutor would be affected. An attorney giving legal advice in a dormitory would be affected. A physician coming in to do medical checkups in the dorm for pay would be affected. It's very similar here. But a current Supreme Court doctrine, this statute has a large valid application, right, to the kayak entrepreneurs and a whole lot of people who don't really have any First Amendment claim but are doing commercial activity on the beach. Your Honor, that's where you would get into the time, place, and manner restrictions. I'm sorry, I don't understand what you mean by that. In terms of judging how much, how overbroad the statute is, because it has to be essentially very overbroad, the statute itself applies to a lot of not First Amendment activity. Your Honor, you're right. This statute applies to everything. It is very difficult to think of a situation where it doesn't apply. So your contention is essentially that there's a subset of things to which it applies and apparently which most of the permits are, which are weddings, and we should look at that as kind of its own little overbreadth area? Well, if you take a look at the Vincent case, Los Angeles against taxpayers for Vincent, and this is a case that I would respectfully request that the court help people understand because they take, it's an either-or case, and they take one piece of it and say this is the test. Which case is it? This is L.A. against Vincent. Putting the signs on the poles. Pardon? The signs on the poles. No, no, this goes to, yeah, this is exactly what you were talking about. It says there are two quite different ways in which a statute or ordinance may be considered invalid on its face, either because it is unconstitutional in every conceivable application, and that's the one that people take out of context and say, well, it has to be unconstitutional in every application. But it doesn't stop there. It says, or because it seeks to prohibit such a broad range of protected conduct that it is constitutionally overbroad, and that's where we are. How about you had a third ground, and that is to say it's unconstitutionally vague. Yes, Your Honor. Someone applying for a permit can't quite know what he or she needs to apply for a permit for, or maybe more important, it insufficiently constrains the discretion of the permit grantor. Does that also amount to unconstitutionality? Yes, Your Honor. And did you make that argument to the district court? Yes, Your Honor, we did. This statute, in its terms and conditions, which were included in the district court's opinion, prohibits obtrusive accessories, and that is why. . . I don't understand the application on that ground to this case. Apparently thousands of wedding permits have been issued under this regulation, right? Yes, Your Honor. Literally thousands and thousands, and no one has ever been refused. Is that right, as far as the record goes? That is correct, Your Honor. Well, then how can there be, you know, any problem under that ground that Judge Fletcher just erased? I'm sorry, under the vagueness ground? Yeah, I mean, everybody seems to understand it. There are parts of it that are unintelligible and that are discriminatory. Are there parts that affect the wedding planners? Yes, because we include ministers who perform the weddings for our clients. There is, in the record, a letter from an archbishop saying, look. . . Ministers are members of the Wedding Planners Association? Is that what you're telling me? No, Your Honor. You don't represent ministers. Are ministers? Oh, gosh, yeah, of course. Oh, I'm sorry, forgive me. Thank you. Thank you, Jim. Yes, Your Honor. The answer is yes? The answer is yes. Anyway, you said there's something in the record about what? In the record it says that, as part of the terms and conditions, you can't have obtrusive wedding accessories. So if you have a cross, is that obtrusive? If you have a cross of a certain size, is that obtrusive? Is there something in the record that tells us . . . Is there something in the record that tells us that the permit applications are tailored in such a way as to avoid obtrusive or . . . So do they actually operate as a constraint in terms of what the would-be permittee asks to be able to do? Very much so. They can't have alters. Alters, Your Honor. Why, somebody, like, you know, made a permit application to use an alter and has been refused? No one would do that. It's prohibited. You mean that the language . . . Alters are prohibited. . . . the language of the regulations says no alters? Yes, sir. Yes, Your Honor. No Buddhist alters, no Jewish alters, no Catholic alters. Does it say Narapa? It says arch. So there's vagueness for you, Your Honor. Is a Chippa an arch? Sometimes it is, sometimes . . . So it's not . . . it kind of goes down like that. It's usually a tablecloth. It's usually a tablecloth. Your Honor, my Chippa . . . It's an inverted arch. Actually . . . So what . . . it would be helpful to know what . . . I mean, you've been somewhat descriptive, but what aspects of this statute are really impairing the ability to do ceremonies? Let's assume we're talking about ceremonies, as they're usually done on the beach. You're saying some of the aspects of the subtrusive wedding accessory is . . . Is the permit requirement itself, the fact that you pay $20 and go online and get it, really a problem in any practical way? If you take it down to the sitting at the computer . . . Right. But to tell you the truth, they keep saying it's simple, but it seems to take five pages to describe. So I guess . . . I haven't gone through the process, so I can't give you my opinion on whether it's simple. I mean, certainly the case law is very hostile to permits, but in terms of what's really bothering you . . . I mean, you, meaning your clients and your client's clients . . . It's the wedding accessories. Is it the time, the two-hour limit? Does that matter? Your Honor, what's really bothering us is that this is the third time in 10 years that they've tried to do this. But let me keep that in Judge Berzon's question. Yeah. I mean, they've tried to do this. Tried to do what? What about this is bothersome? We have a declaration from one of the officiants that says it's very hard for her to get the insurance that's required because of this permitting requirement. She has to get insurance. When she applied for insurance, this declaration is part of the record. When she was applied for insurance, she was told, well, you know, it's very hard for ministers to get insurance. Are you saying the insurance requirement violates the First Amendment? Yes, Your Honor. You know, you've got two cases, Foods Not Bombs and Long Beach, that sustain insurance. Judge Berzon's dubotante on the question, but then sort of has to . . . I'm worse than dubotante. I believe Your Honor . . . I'm with him. We'll come back around. I believe, Your Honor, that in that case, there was a choice between insurance or indemnification. I remember looking at that case. And here, they're both required, both insurance and indemnification. And we have an officiant who reports that when she tried to get the required insurance, she was told it was going to be very expensive because ministers are child abusers. Not all of us. And lots of child abuse takes place at weddings? Your Honor, sometimes the DLNR shows up with guns to examine permits at weddings. And that has happened. There's also a declaration in the record to that effect. But there is some possibility, then, that the record here shows some problem with the insurance that wasn't in the other cases. Yes, Your Honor. Well, I heard a hopeful note in that question. What else bothers you? I'm trying to figure out what constraints, realistically, are there in this that you, your client . . . Is the two-hour limit a problem? Probably not. I mean, I'm . . . If you were having these major receptions, then that's really not what you're after, is really what you're saying. The problem is that the statute is overbroad. The problem is that the statute regulates a man, a woman, and a minister in an honorarium. It is vastly overbroad. Okay. Let's have him on the other side and then we'll give a chance for questions. Thank you, Your Honors. May it please the Court, my name is William Weinhoff. I'm a Deputy Attorney General. In this case, I represent all of the defendants, all of the state defendants, official capacity defendants. You know, I'm sure I'm going to get questions pretty quickly, but I wanted to start by . . . We went deep into this argument before we, Judge Berzon, asked the question that shows that you know, and I know you do. One of the important aspects of this case . . . These folks represent beach wedding people, but this is not a beach wedding statute or rule. It's a rule that says you can't engage in any commercial activity in unencumbered areas without a permit. We apply . . . So, all that means is that we don't then enjoin . . . We say you can't enjoin the whole statute, but you can enjoin it as applied to weddings. So, I don't see where that gets you except . . . I mean, yes, it gets you someplace you want to be because it means that in all likelihood, if we don't . . . There's no way the statute as a whole is getting enjoined, but it doesn't really help with regard to how this case comes out. It's very important in a lot of . . . in a couple of fashions, and I'm going to . . . two particular fashions. First of all, it's a question of whether or not a facial challenge can be brought to this. Your case law says no. All right, but why isn't it a semi-facial challenge at that point? A facial challenge as applied to weddings, as opposed to a particular wedding? I don't know. I don't know that I never . . . I don't know that there's any cases that say that. I mean, food versus body . . . The regulations online actually basically apply to weddings, right? No, that's not so, Your Honor. I thought they say they basically apply to weddings. They don't. They say they . . . if you go on the website, it says commercial activities slash weddings, beach weddings. All right, slash weddings. Is there any dispute with what your client has been asking weddings to apply for permits before they do this? No. So, they're just doing it for the hell of it? All these permits are just . . . even if they can go out on the beach . . . No, Your Honor. Let me understand this clearly because I'm not sure you want to say this. Okay. Are you saying that anyone wanting to do a wedding is not covered by this statute? I don't think I understand that question. Will you ask me again? Yeah. Because I think we have a glitch at the moment. I want to make sure it's understood. Okay, good. I understood you to say a moment ago that this statute does not apply to weddings. Oh. No permit is required for anyone on the beach. Oh, okay. I don't think you meant to say that. I can see why you sat up in your chair, Your Honor. What I meant to say is that it doesn't apply only to weddings. It applies to all commercial activities, not just weddings. So, is your position, therefore, that because it's not . . . if it's not facially invalid because it applies to many commercial activities that aren't weddings, then as applied to weddings, each individual wedding has to come here first. In other words, they have to say, we are planning to have a wedding with three people, and so we're going to adjudicate each individual wedding that way? That's what I think an as applied challenge is, Your Honor. They come before this court with the particular circumstances of their case. I'm not saying they . . . Let me talk about as applied. When I argued as applied below, and I was convinced, actually, by Judge King. Judge King said, you don't have a facial challenge because of food, not bombs, which is exactly what I argued, but you do have an as applied challenge for a bunch of other reasons. They want to have stuff on the beach, and they can't, and therefore they have an issue with that. And then . . . And so I wasn't even going to argue. And then you folks came out with your case in Lopez, talking about pre-enforcement cases, and that was right when I was filing my brief, and I said, gee, this seems like it applies. And then I thought about it again, and I looked at Judge King's ruling again, and I have to admit that I don't really think that . . . I think they do have an as applied challenge. And so I'm perfectly happy to argue, Judge Berzon, that as applied to weddings of only three people, that this statute is constitutional. Okay, well, let's do that. And the reason that that goes to the . . . I finally get to the second reason that I think it was important that you asked and acknowledged that this applies to things other than beach weddings. And the reason that it is constitutional, even though it might apply to a wedding of as small as three people, because we are not looking just at weddings. We're looking at the other instances that you also picked up in the record and that we talked about. We're talking about, for example, hotels. This is in the record. Hotels . . . But now you're circling away from the as applied challenge that you said we could have. But the point is . . . What is your position about whether if you had a statute that said that any size wedding, a ceremony, just ceremony, has to get a permit to go forward on a beach in Hawaii? Would that be a valid statute? It might not be because it doesn't . . . because the reason that the difference between a statute that said any size wedding versus any commercial activity, commercial activity deals with a broader sweep of things and is intended to prevent . . . Any size wedding in which there's commercial activity. Yeah, right. That would be okay? I don't know if it would. But what I'm saying is this law sweeps a broad . . . addresses a broader category of problems than just weddings. I understand. And ultimately the question is, does somebody have a constitutional right to have a wedding on a beach of a relatively small size to have the ceremony without getting a permit? At some point that question . . . Your position is not in this case. I'm not sure I agree with that. But the constitutional issue still exists. If somebody said for that you need a permit, is that okay or not? And the exact way you analyze that is you do not bring a facial challenge because of food versus bombs. You bring an applied challenge. And the way you do the applied challenge is assuming you get in this case, assuming that this is a public forum, which I don't think you even have to get there, but assuming it is a public forum, then the question is, is it a reasonable time, place, and manner? What is your answer to that? I gave you a very specific hypothetical. The answer to that question is it might not be because . . . Well, because we've said that you . . . First of all, do you agree that there's freshman activity here at all? Yes, absolutely. Okay. So we've said in Berger, for example, that for small groups of people in public forum . . . Let's put that question aside for a moment. You don't have . . . requiring a prior permit is a problem. It's a problem, yes. And it's, in fact, invalid. It wasn't valid there. It was invalid in that case, that's right. All right. So how would you distinguish this hypothetical? Okay. Well, the hypothetical question that you asked me was would it be unconstitutional to have a rule that said any size wedding requires a permit? And I guess the answer is under Berger, I think you're right. It would be, yes. And the reason my statute is different than that, the reason that is different than Berger . . . Berger went that way and they said, look, it doesn't make sense in this case because . . . exactly what you would argue only with respect to beach weddings. There's no particular difficulty in having only three people down there. And the reason that is different here is our statute, our rule actually, is addressing a broader set of concerns. A broader set of concerns that would not be addressed by something that says it only applies to three people. That doesn't work very well for me because what that tells me is if you embed an otherwise unconstitutional statute in a statute that does other things, all of a sudden it becomes constitutional. No, that's not the argument, Your Honor. No, but that's the effect. No, I don't think it is. The reason is, you know, you have to . . . you have to . . . we have . . . I think Berger is really the issue. The issue here is time, place, and manner. And the question is what we're really talking about right now here is narrowly tailored. I think that's exactly what we're talking about. And the statute is not narrowly tailored. The reason that we suggest it is narrowly tailored is because many of your cases, and under the pressure of being nervous, I'm not calling them up into my mind. But there's a number of cases, and I know you know them, and I put them in my brief, that talk about you don't just look at this particular activity. You have to look at the whole scope of what the law is trying to get at. And so the question is specifically . . . Those cases say . . . well, I may be misunderstanding the thrust of your argument, but the cases that say look at the whole thrust of what's being regulated, those tend to be over-breadth cases where we're dealing with a facial challenge and trying to figure out, okay, what's swept within this? And if the majority of the activity that's swept within this is not protected speech, then you're over-breadth . . . I think the other set of cases you're alluding to are ones that say, well, if you had lots of people like this, it would be a problem. So, therefore, you can go forward on the premise of essentially dividing up the space so that people don't bump into each other. But our cases have also said generally that that applies to relatively large groups of people. And the lowest number we've gotten down to is 75 in Long Beach. Generally, generally that's true. And there's no doubt in my mind when I was preparing for this argument that my most difficult issue was Berger. Interestingly, I didn't think it was our . . . Well, not just Berger. I mean, even Long Beach and Santa Monica. Santa Monica was 150 people. Long Beach was 75 people. Long Beach pretty much said this is it. This is the bottom line in terms of what size people can . . . All of those cases, all of those cases . . . and I mentioned this with Berger. But Berger doesn't say, look, you can't have a permitting process that applies to as few as three people who are done with the case. They went on for 61 pages. And the reason that they talked about it is the reason that it's hard, I think . . . 61 pages because there were several other rules, like capital audience rule and several other things. Well, yeah, okay. But . . . And we'll go backwards. They like to write stuff. Fair. And they also went on for 61 pages because there were several dissents that we had to deal with. But the reason that there were several dissents is because it's a difficult question. It wouldn't be a difficult question if there was some sort of bright-line rule that said having something for less than 75 people is always wrong. Well, let me ask you just practically, under this regulation . . . Yeah. I mean, I guess, you know, the argument from the plaintiffs is, well, you know, it regulates weddings as small as three, five, you know, seven people. Right. It does. And are there other activities, commercial activities that this statute regulates that say cover two or three people? Yes, Your Honor. And . . . Give us some examples. Give us some examples. I've been struggling to get to my examples. And in the record, there are . . . that's exactly why we have this statute. What do you mean by indirectly? Well, I'm saying in the record, the extras of the record, we have these. I'm not just making them up. They're there. We had, and this is what I was going to say, you have hotels that would come and would put just to, well, to say beach chairs or beach umbrellas or other stuff that they wanted to rent would cover the beach with those. Those would be there all day, but there would never be more than two people there. One would, some customer would come along, and the customer would say, I want to rent a chair. And so the customer would go down with the hotel operator. A, there's no First Amendment activity. B, we're not saying, the issue here doesn't involve putting chairs on the beach. I mean, it does the way your statute is written. Right. But it also covers if you don't put a chair on the beach. Now it covers, well, yes, you're right. You're right. And so, but I mean, the other examples are kayak school. I guess what I'm trying to give is . . . The other thing about this rule, as I understand it, is if I'm not paying anybody, I can go there with all the chairs on the beach I want. Right. So if I want to have a school picnic, I can come there, have 200 people, lots of chairs, tables, and everything else. Right. How does that make any sense? It makes sense. I mean, if you look at it from an equal protection point of view, it makes sense because commercial activities have been a problem. And we haven't had a problem with non-commercial activities. We're entitled to start by the thing that's been a problem. That's clear under equal protection. By the way, let me ask you just a side question. You know, in all the briefs, everybody keeps referring to unencumbered beaches.  Well, what is an unencumbered beach? Is that defined in state law? Yes, Your Honor. I think I might have given the definition, but I did talk about examples. It means a beach that has not been committed to the jurisdiction of a specific state agency. And I gave an example in the breach of Waikiki Beach is committed largely to either the city or to, I believe it's the boating division. So Waikiki Beach is, for example, not an unencumbered state beach.  On a commercial point, isn't there beams of First Amendment law saying the fact that somebody is getting paid or isn't paid is completely irrelevant? I mean, book publishers and newspaper publishers and people who are being paid to perform and so on still have First Amendment rights. Yes, yes. We haven't argued this as a commercial case. I'm not saying commercial speech. We didn't argue it as a central... I understand that. But you are arguing that for some reason the difference between these school kids on the beach putting on a play and somebody putting on a wedding ceremony on the beach is that there's somebody getting paid in the second instance. Why does that matter? That's an equal protection argument. No, it's a First Amendment argument. I want to know, isn't there... In what way? It's not an issue of content neutrality, Your Honor. Isn't there reams of First Amendment speech...law... Yeah. ...saying that the fact that somebody is getting paid does not affect their First Amendment rights? Yes. So why...how...is the fact that you are drawing a line between people who are getting paid and people who aren't getting paid to do exactly the same thing as I understand it? Otherwise, if that was so, Your Honor, there would never be any...I mean, I guess the argument...well, the point is we draw that line. We say their speech. And so the question is can we draw the line on the basis of time, place, and manner restrictions? No, you're drawing on the...you're not. You're drawing on the basis of whether they're getting paid. If this person is speaking and that person is speaking and one is getting paid and the other one isn't, why can you draw that line as a First Amendment... That's not a First Amendment line. ...why does that help you with the First Amendment problem in any way at all? Well, I don't think it's a First Amendment issue, Your Honor. There's a distinction. I guess I'm... So it would be okay to have a rule that says you can give out free newspapers but not ones where the reporters are paid? No. Well, why not? But the...see, I don't think it's a...I don't think...what I'm trying to express is it's not an issue between commercial and not commercial. We acknowledge this is speech. We're not saying it's not speech because it's commercial. We're not saying it's entitled to less protection because it's commercial. It's commercial speech. So we have... It's not commercial speech. I beg your pardon. I misspoke. It's speech. It's fully protected speech. So the question is, are we able to restrict this fully protected speech? And we argue that we can because these are properly tailored time, place, and manner restrictions. Actually, they're not. Because the main restriction, which has nothing to do with time, place, and manner, is on people who are getting paid versus people who aren't getting paid. I guess the only thing I can say on that, Your Honor, is I don't think that's a First Amendment issue. I think that is an equal protection issue. With respect to the First Amendment issue, the only place that would come up would be whether it was content neutral. And the argument was made here that because we restrict commercial speech and we don't restrict non-commercial speech, that that's a content...that's not a content neutral restriction. But the argument we make is that's not so because we restrict any commercial activity. So I guess I just disagree with what you're saying, Your Honor. I think if you run through the First Amendment analysis, there's nowhere in there that says that just because we restrict one category of speech versus another category of speech, as long as we do it content neutrally, that doesn't implicate First Amendment principles. It implicates equal protection. Let me follow up on my...with the unencumbered beach. Now, how far back from the...does that extend? It extends...in Hawaii, the...well, I mean, a beach is sand. I don't know how much area this regulation covers. I mean, it goes back to where? The mean high tide? A thousand feet beyond that? A beach is sand. The dividing line between private and public land might not be coextensive with a beach. Does that answer your question, Your Honor? No, because I'm trying to get where, you know, where there's an alternative form. Does it apply, like, to unencumbered other lands of the state that are not beaches? It does not, Your Honor, at this point. It has not been extended to that. And it also does not extend to the shoreline. It might not necessarily extend past the beach. There could be an area of public ownership that is not on the beach, but I have to admit I don't know the answer. All right, now one more question. Again, that would be an as-is question. It would depend on where it is. All right, now one more question about the area. There is a lot in the record that might suggest these unencumbered beaches, at least some of them, are designated public fora, right? Because the state, you know, has almost affirmatively said you can conduct all these activities on here, including First Amendment activities. I don't believe there's anything in the record that says that. Is it your position it's not a designated public forum? Yes. Unencumbered beaches? Yes. Or is it a question of fact? Well, I think the question of fact would be whether any ‑‑ I think there is definitely or could potentially be a question of fact as to whether any particular beach was a public forum in some fashion. Well, the reason it makes a difference, obviously it makes a difference as to, you know, what rules First Amendment rules of speech apply, right? Right. But your position is at least all unencumbered public beaches are not public designated or traditional public forum. At least all of them are not. It's possible that some could be. Some may be. But it's a question of fact as far as you're concerned. Well. Well, how do these beaches differ from, I mean, they're public parks in meaning that people in general. I don't think they are public parks. I'm sorry? I don't think they are public. Why aren't they public parks? Because they're not. They're public areas that. Most of the public parks are designated, aren't they? I mean, encumbered in terms of the state. What does encumbered mean? Right? Yeah, in most cases what that means, Judge Berzon, is they're encumbered if they're dedicated to a specific government agency. Most public parks are dedicated, in fact, to the division of parks in the Department of Land and Natural Resources. Those are encumbered beaches, not unencumbered beaches. And they would therefore not be part of, would not be covered by this lawsuit. That's right. There are many places in Hawaii, as you drive around, that says such and such park. Right. Which are beaches. Now, those beaches are different kinds of beaches than the beaches that we're talking about? They could be. Absolutely, in fact. Absolutely. When you drive around, like I live in Kailua, so I'll give Kailua, Hawaii, a walk, so I'm most familiar with that. You drive down Kalaheo Avenue and there will be a place where you could pull over and park and you're going to walk down a lane about this wide, maybe six feet wide. You walk down there, there's houses on this side, houses on that side, and then you get to the end and there's a strip of beach. That's not a park. And it's completely different from a place like Sandy Beach Park. So, yes. The answer to your question is yes. There's lots of beaches that are completely different than parks. What's different about it for this purpose is what? People can go there. Nobody's stopping. I mean, to go back to my hypothetical, if they want to take a school class there and put on Hamlet, they can do it. Right? Not if it's commercial. I understand that it's commercial. But in terms of ordinary public access to these places adjacent even to urban areas where people go and do ordinary things that they do on beaches and do it, right? Yes. So, the only difference between the encumbered and the unencumbered is that some of them are being run by particular government agencies and others of them are being run by the general, by whom? The general landscape. Land and natural resources. I wouldn't say that's the only difference. You know, as a generic matter, that's the only difference. I mean, a beach looks like a beach. There's sand. You folks have cases that talk about whether things are public forums or not, and I went through some of the factors. This court has, at least on one occasion, at least one, said they weren't going to decide whether all beaches in Hawaii were public forums. Fine. They didn't decide it. So, now, if we have to decide it, what should we decide? You should decide that they're – well, first of all, I don't think you do have to decide it because you'd only have to decide if there's a facial challenge, which your cases say there cannot be. Why is that? Because that's what Santa Monica says, Your Honor. It says if it's not a facial challenge, you don't have to decide if it's a public forum in order to decide if it's a public challenge? If it's not a public – if it's not a – if it's not a – if it's not a facial challenge, then you don't have to decide whether all beaches in Hawaii are public fora. You have to decide whether the beaches that these folks are using are public fora. That's what it says. Right, and so that question is now in front of us. Are the unencumbered beaches in Hawaii unencumbered? We don't know which one they're using. It makes a lot of difference whether they're using Judge Berzon's, one where you drive around and you see it and it's a park, versus the one in Kailua where you have to walk down 100 feet past houses on each side. Those are two completely different animals. Do we have in the record or not in the record that will allow us to differentiate among them? Nothing. Nothing. I'm – They haven't put in – they don't even tell you where they want to have the weddings. In Frisbee, which we're talking about streets, the conclusion was streets are public forum. It doesn't matter what kind of street it is. If it's a street – and there you had, as I understand it, a small road in a suburb. Right. But it's a public forum because streets are public forum. That's true. Right. So, I mean, what is different about this? I mean, they use the word park in the cases, but what they mean by park is a place in which people can go and do recreation, and whether there's sand under your feet or rats under your feet can't be the difference. Well, Your Honor, every street is a public forum because that's what the cases say. Right. They are the quintessential public forum. And parks too. What your cases say – well, actually, not all parks are necessarily – Parks more so. Not all parks are necessarily public forum. That's also – that's what Bordley says. It depends on the characteristics. They're different than streets. And I submit that beaches are different than parks. You – I mean – Well, sure they are. I mean, they're not. First of all, a lot of parks are beaches. And second of all, the question of whether there's sand under your feet or grass under your feet can't be the difference. Well, you know, I guess, Your Honor, what I would suggest and ask is could I direct you to those portions of my brief in which I answer those specific questions based on your case law. I don't – it's possible that you could find that all public forum – that all beaches are public forum, but I think that's a very sweeping rule that isn't necessarily – Give me a rational basis or a sensible basis for finding that it makes a difference whether a place where people go to do recreation and where there is no governance of what they do there and there's a wide range of activities isn't a public forum because it's a beach. Okay. I can do that because – Okay. Go ahead. First of all, they are the type of thing that have from time immemorial been used for the purpose of public expression. There's no evidence on the record whatsoever. And I don't – you know, I'm not going to tell you what my experience is. Do people go down to beaches to hold rallies or get sand on a soapbox to give talks? There's no evidence in the record of that. That's one. Number two, a park is typically an area where, just as you say, you drive past it, you drive up to it, you see it, it's open, it's inviting. That's not so with respect to all beaches. Some beaches are very difficult to get to. You know, you've got a statute, it seems to me, that designates unencumbered beaches as limited public forum. Can you cite that to me, Your Honor, because I'm not thinking of a ratified one. J.R. Section 13-7- and then there's some numbers that come after that, 4, 5, or 6, and so on. I'll read the statute. It recognizes, of course, rights and privileges of individuals. This is 13-7-6. Okay. Are you familiar with the statute? You know, not intimately, so I guess I'm going to say. Rights and privileges of individuals and groups to engage publicly in assemblies and meetings and parks and other signs designated within this chapter under the Jurisdiction and Management Operating Department of the Land and Natural Resources. Specifically, the purpose of the statute as to those lands is to, one, provide for the exercise of constitutional freedoms commensurate with ensuring the proper function of government activities. It then goes on, public assemblies, meetings, gatherings, demonstrations, parade and other such events, resulting in assemblies of more than 25 persons. Beaches under the jurisdiction are included within the chapter. Why is that not a statutory provision for now a limited public forum? For making it a designated public forum. I don't know. I don't know the answer. I think that's a good point, Your Honor, which I had not thought of, nor do I see it in the brief, but I think it's a good point. I really do. But let me just say this. I know I've gone vastly over my time, which I appreciated talking to the Court, because I think you've all raised some very good points, and I don't think this was an easy case. I really thought Berger was the most difficult part of this case. But just to that last point, if these are not public fora, then I win. And all of this argument has been, assuming they are public fora, the question is whether it's narrowly tailored. I really think this comes down to narrowly tailored, and I struggled very mightily to understand why we're different than Berger, and I believe that we are different from Berger, for the reasons that Judge Chisima helped me finally to get out, and that is that in order to craft this rule, we didn't craft it just for beaches, I mean for beach weddings, although it covers it. We crafted it for these other things as well, and in order to address all of these problems within the sweep of it, we had to do this. Let me just say one more thing. I promise it will only take like 20 seconds. I don't think they're entitled to a facial challenge, but if they are entitled to a facial challenge, then it's the overbred thing. As was discussed, it's Vincent, first of all, always is there anything that might be within it, or they say the new case is Washington, U.S. v. Stevens, and stuff like that. May I say one thing as to vagueness? One more thing. May I say one thing as to vagueness? This really means one more thing. With respect to vagueness, I would point to the case that the other side has kindly mentioned to us, Holder v. Humanitarian, 130 S. Court, 270.05, and vagueness has to do with the people before you. Vagueness is always as applied, and it's not vagueness to them. Thank you, and again, I really appreciate you taking so much time with me. Thank you. They've run over. We're running late. Two minutes. Can I split that? I just want to say a few things. Not fast. Very quick. First of all, the experts on, one more thing, who are out here, they're 11 and 6. They know one more thing better than anybody in the universe. One of the things that came out here was the question of why are so many people getting permits for weddings. It's because of the wedding planners. The wedding planners can't afford to have their wedding be disrupted. There are plenty of weddings going on where people from out of state don't investigate, never even think about, you know, doing a professional wedding, and they pay money to do something on the way to the beach. This includes traveling to the beach, which is just bizarre. The school kids that you talked about, those would be there with their teachers, presumably, and that would be someone being paid, and so they would actually have to get the permit, and surely that's overly broad to have school kids go to the beach to have to get a permit because their school teacher is paid is nonsensical. Is there anything in the evidence remotely suggesting that that permit application process is being applied to that? No, no, and that's what the problem is. On paper, it applies to everything, and so they've singled out weddings for vastly more attention than anything else. They actually use the word weddings in the statute, and I don't want to take up too much time. Thank you, Your Honors. Sorry. Thank you. There's a case that was decided since we briefed this for the court. That's Lopez v. Condaele, 2010 U.S. App, Lexus 25823, and there that helps to clarify this confusion about food not bonds. About what? I'm sorry? I'm sorry, about food not bonds. Santa Monica v. Food Not Bonds. Santa Monica v. Food Not Bonds looked at a regulation that had to do with food distribution and said you can't do a facial overbreds challenge for first amendment purposes under a food distribution regulation, and that's the argument at stake here. This case goes so far beyond food distribution. It covers everything, and that distinguishes it. In addition, Lopez v. Condaele helps clarify this. In that case, the Ninth Circuit held citing food not bonds that you do have standing to bring an overbreds challenge if your organization has altered its conduct, if it's apprehensive in having regulations enforced against it, and if it has engaged in that activity in the past. And those criteria are met for time, place, and manner. We'll rest on our briefs. The new case of Anderson v. Tomoza Beach, the tattoo case, emphasizes again that often the medium is the message. The beach is an important part of the meaning of the wedding in Hawaii. Thank you very much. Thank you very much. Thank you both sides for your arguments. Mike, this is who I submitted for decision. We're now in recess. What we're going to do is walk off the bench, change out of our roles and come back. I know there's some students who might have some questions, so we will not take our conference. We'll just adjourn. We'll be back out in about two minutes. Good. Thank you. All rise. The score for this session stands adjourned.
judges: Tashima, Fletcher W. , Berzon